GEORGE T. MILLER v. JAMES OTTAWAY AND GEORGE BURLESON.

*Bills and notes—Sale—Warranty—Good-faith purchaser.*

A span of mares were sold at auction under a warranty that they were with foal.   The purchaser gave his promissory note in payment, and it was purchased by a person who acted as clerk at the sale, in good faith and before maturity and for value, with knowledge of the warranty, but without notice or knowledge of its breach; and it is held that such breach could not be set up as a defense in a suit by such purchaser on the note.

Error to Genesee.   (Newton, J.)   Argued May 7, 1890. Decided June 6, 1890.

*Assumpsit.*   Defendants bring error.   Affirmed.   The facts are stated in the opinion.

*Howard & Gold,* for appellants.

*Durand & Carton* and *Ira T. Sayre*, for plaintiff.

CHAMPLIN, C. J. This suit was brought to recover the amount of a promissory note dated November 15, 1887, due in one year, payable to Archibald Carmichael or bearer, for $407.

The consideration for which the note was given was one span of mares and two colts, purchased by James Ottaway at an auction sale. Ottaway bid off the span of mares for $285, and the colts for $122, and gave his note for the amount. Defendants claim that at the time of sale the mares were warranted to be with foal, and, if they proved to be so, then he (Ottaway, the purchaser) was to pay the further sum of $16 for the service of the horse. Plaintiff purchased the note of the payee on December 3, 1887, and paid full value for it. It turned out that the mares were not with foal. The plaintiff was present at the auction sale, and acted as clerk for Mr. Carmichael, who was confined to his house by sickness, and had general control of the auction. If the warranty was made as claimed by the defendants, plaintiff was fully aware of it at the time. No question is made that the mares were not served with the horse in the proper season. Defendants claim to have become satisfied that the mares were not with foal in the spring or summer following. The plaintiff denied that the sale was with the warranty claimed by defendants.

The first question to be decided is whether, conceding there was a warranty, it can be set up in recoupment of damages against the note in plaintiff's hand. Restating the facts for the purposes of this question, it presents a case where no fact exists which impugns the title of the holder, nor the honesty, good faith, or validity of the original transaction of which the note was a part. There was simply a warranty on the sale that the mares were

with foal, and, if they proved to be so, the purchaser was to pay $16 more for the service of the horse. The purchase of the note was for full value, with a knowledge of the warranty, but without knowledge of its breach, before the note matured, and before it was known that there would be a breach. The promise of the defendants was not conditional; neither was there fraud nor imposition connected with the inception of the note. The plaintiff, having paid value before maturity, held the note by an independent title.

It was said by this Court in *Nichols v. Sober,* 38 Mich. 681, that—

" The law has always been solicitous to exclude any rules calculated to hinder the free circulation of mercantile paper having legitimate inception, as in this case, and it is settled in this State that a transferee cannot be deprived of his right as a *bona fide* holder in this class of cases, except upon evidence sufficient to show his participation in the fraud, or equivalent misconduct of the party who transfers to him."

It is laid down in 1 Pars. Bills & Notes, 261, that—

" Knowledge on the part of the holder, at the time he took the note, that it was not to be paid on a specified contingency, is not sufficient to defeat his right to recover, although the contingency had then happened, if he was ignorant of this fact;" citing *Adams v. Smith,* 35 Me. 324; *Ferdon v. Jones,* 2 E. D. Smith, 106; *Davis v. McCready,* 4 Id. 565. See, also, *Kelso v. Frye,* 4 Bibb, 493; *Dow v. Tuttle,* 4 Mass. 414; *Bank v. Cason,* 39 La. Ann. 865; *Patten v. Gleason,* 106 Mass. 439; *Davis v. McCready,* 17 N. Y. 230; *Craig v. Sibbett,* 15 Penn. St. 238; *Bond v. Wiltse,* 12 Wis. 611.

From the foregoing authorities, and upon reason, the correct doctrine appears to be that it is not a good ground of defense against a *bona fide holder* for value that he was informed that the note was made in consideration of an executory contract, unless he was also informed of its breach. If he had knowledge of the breach, the defense

may be interposed. *Wagner v. Diedrich,* 50 Mo. 484; *Coffman v. Wilson,* 2 Metc. (Ky.) 542; *Bowman v. Van Kuren,* 29 Wis. 218; *Sutton v. Beckwith,* 68 Mich. 303.

The note in question being valid in its inception, and not subject to any condition, a collateral agreement to warrant the mares to be with foal cannot be set up as a defense to the action in this case, where the plaintiff purchased in good faith for value, and without any notice or knowledge of any breach of the warranty. A mere collateral agreement or warranty made at the time the note was given does not affect the validity or negotiability of the note, although the purchaser before maturity may know of such agreement. It is common knowledge that in many executory contracts, involving large sums of money, such as drafts drawn against bills of lading, and also such as the purchase of real estate, lumbering contracts, construction of buildings and roads, and other business dealings, notes are given, and often negotiated to those familiar with the terms of the contracts; and it would unnecessarily hamper the transfer of such paper, and affect its value injuriously, to hold that the purchaser, before breach of such contract, although he had notice of the contract under which it was given, takes such paper subject to any damages that may arise to the maker from failure of the payee to perform such contract. There is neither reason nor necessity for so holding. Indeed, the defendants in this case set up in their notice of defense the warranty and its breach, and that plaintiff purchased the note with knowledge of such warranty and its breach before he so purchased.

The jury found, in answer to a special question, that the plaintiff, George Miller, bought the note in question of Archibald Carmichael before his death; and it was in proof that he died January 6, 1888. This is an end of the case. The defense is not made out, and it is imma-

terial if testimony tending to show a warranty by Car-michael was erroneously ruled out. Under the special finding, which has the force of a special verdict, no other general verdict could have been rendered by the jury than the one they did.

The judgment must be affirmed.

The other Justices concurred.