[S. F. No. 5918. Department Two.—April 14, 1913.]

PHILIP H. FLOOD, Respondent, v. JOSEPH PETRY, Defendant and Respondent, and THE NATIONAL BANK OF THE PACIFIC (a Corporation), Defendant and Appellant.

PROMISSORY NOTE—NEGOTIABLE INSTRUMENT—DELIVERY AS PART OF FINAL PAYMENT OF EXECUTORY BUILDING CONTRACT—FAILURE TO COMPLETE BUILDING—BONA FIDE TRANSFER BEFORE MATURITY—PLEDGE — FAILURE OF CONSIDERATION.—The maker of a negotiable promissory note, executed and delivered to the payee, a contractor for the erection of a building for the maker, contemporaneously with the execution of the building contract, and as part of the final installment payment provided for therein, cannot, after the failure of the contractor to complete the building, maintain. an action to cancel the note on the ground of failure of consideration, as against a *bona fide* pledgee of the note for value, before maturity, and before the breach of the building contract, notwithstanding the pledgee, at the time of the pledge, had notice of the terms and conditions of such contract, and that no work had been done thereunder by the pledgor.

ID.—CONSIDERATION—ESTOPPEL OF MAKER.—The delivery of such ne-
gotiable promissory note long before the time mentioned for the
payment of the final installment upon the building, estops the
maker from asserting that its only consideration was the comple-
tion of the building.

ID.—EFFECT OF FAILURE OF CONSIDERATION AS TO BONA FIDE INDORSEE.
A failure of consideration in whole or in part, after a *bona fide*
assignment of a promissory note, is not a defense to a suit by
the assignee against the maker, notwithstanding the assignee's full
knowledge of the original consideration for which the note was
given.

ID.—EXECUTORY CONTRACT AS CONSIDERATION FOR NOTE—ASSIGNMENT
BEFORE MATURITY—EFFECT OF BREACH ON RIGHTS OF INDORSEE.—
The breach of an executory contract which formed the considera-
tion for a negotiable promissory note is not a defense against
an indorsee who acquired the note in good faith for value before
maturity, knowing that the consideration was the executory agree-
ment, but without notice of its breach. The rule is equally appli-
cable where the indorsee so acquired the note, knowing that its
consideration was an executory agreement on the part of the payee
which might be broken and which was in fact violated after the
transfer of the note.

ID.—KNOWLEDGE OF NATURE OF CONSIDERATION BY INDORSEE — BONA
FIDE HOLDER.—Knowledge that the note was given in consideration
of the executory agreement or contract of the payee which has not
been performed will not deprive the indorsee of the character of a
*bona fide* holder, unless he also has notice of the breach of the
agreement or contract.

APPEAL from an order of the Superior Court of the City
and County of San Francisco granting a new trial. J. M.
Seawell, Judge.

The facts are stated in the opinion of the court.

Gavin McNab, Bronte M. Aikins, R. P. Henshall, and Nat.
Schmulowitz, for Appellant.

Sullivan & Sullivan and Theo. J. Roche, for Plaintiff and
Respondent.

MELVIN, J.—This is an appeal by the defendant from an
order granting a motion for a new trial. The action was one
for the cancellation of a certain promissory note. There

were two counts in the complaint, one alleging want of consideration ·and the other averring failure of consideration.

The plaintiff Philip H. Flood entered into a contract with one Joseph Petry by the terms of which the latter was to erect a building on land belonging to plaintiff for the sum of twenty-two thousand five hundred dollars. There were to be seven progress payments, according to the terms of the contract, six in cash, but the final one partly in cash and partly by a note for the principal sum of three thousand five hundred dollars, payable in eighteen months. The seventh payment was to become due when thirty-five days should have expired after the date of acceptance of the building, provided no liens nor claims against the building, lot or premises should have been filed or recorded. At the time of executing the contract, however, plaintiff signed and delivered to Petry a note which was in the following terms:

"$3500.00.

SAN FRANCISCO, CAL., Mch. 15th, 1907.

Eighteen months after Oct. 12, 1907, for value received I promise to pay to the order of Joseph Petry the sum of thirty-five hundred dollars, with interest thereon in like gold coin from date until paid, at the rate of 6 per cent per annum, and if the interest be not paid annually, to become as principal, and bear the same rate of interest. This note is negotiable and payable without defalcation or discount and without any relief or benefit whatever from stay, valuation, appraisement, or homestead exemption laws.

Due April 12th, 1909.

PHILIP H. FLOOD."

Petry borrowed two thousand dollars from the defendant corporation, gave his own notes for that amount and pledged the note above described as security.

The trial court made findings among which were the following:

"That the said promissory note was the note provided in the said contract to be made and delivered to the said defendant Joseph Petry as a part of the seventh payment provided in the said contract to be made, and that the sole consideration for the making, signing, and delivery of the said promissory note was the execution of the said contract by the said defendant Joseph Petry.

"That at and prior to the time the said promissory note of the plaintiff was indorsed and delivered by the said defendant Joseph Petry to the said defendant The National Bank of the Pacific the said defendant The National Bank of the Pacific had notice that the sole consideration for the making, signing and delivery of the said promissory note by the plaintiff to the said defendant Joseph Petry was the execution of the said contract by the said defendant Joseph Petry, and had notice of the terms and conditions of the said contract.

"That at the time the said promissory note of the plaintiff was given, made, signed and delivered by the plaintiff to the said defendant Joseph Petry, and at the time the said promissory note of the plaintiff was indorsed and transferred by the said defendant Joseph Petry to the said defendant The National Bank of the Pacific, the said defendant The National Bank of the Pacific had notice that no portion of the work to be done by the said defendant Joseph Petry under and pursuant to the terms of the said contract, between the plaintiff and the said defendant Joseph Petry, had been done by the said defendant Petry and had notice that the said work had not been commenced."

It was also found that Petry abandoned work on the building on May 22, 1907, after he had received two of the payments for which the contract provided. The court likewise found that the consideration failed as to defendant Petry (who had not answered and against whom a default had been entered).

Respondent insists that the motion for a new trial was properly granted, because the consideration for the note was not the execution of the contract by Petry, but was the completion of the building in accordance with the terms of the contract. Appellant contends, however, that the findings are sustained by evidence in which there is no substantial conflict and that failure of consideration is not a defense open to a maker as against an indorsee for value, even in a case where the indorsee knew that the note was intended to be the evidence of an indebtedness that would become due if an executory promise were performed. In behalf of his contention, respondent, Dr. Flood, contends that since the note and contract were executed at the same time, and since there is

evidence tending to establish the knowledge of that fact by
the defendant corporation, the whole transaction must be con-
sidered together, its parts must be construed as forming one
agreement, and that therefore the consideration of the note
must have been that mentioned in the building contract, the
completion of the structure and its acceptance free from all
liens.   This was the view taken by the justices of the district
court of appeal, but we find ourselves unable to agree with
them.   It seems to us that the delivery of the promissory
note (which by its express terms was made negotiable) long
before the time mentioned for the payment of the final in-
stallment upon the building, precludes the maker of the in-
strument, upon the simplest principles of estoppel, from as-
serting that its only consideration was the completion of the
building.   The plaintiff's own account of the matter is, in
substance, that he and the architect met at the latter's office;
that Petry, the contractor, was there also; that after he had
signed the contract and blue prints, the architect said: "About
this note"; and that thereupon the note was passed to Dr.
Flood who signed it and handed it back to the architect who
delivered it to the contractor.   Dr. Flood denied the state-
ment made by the contractor in his testimony that the latter
said during this conversation that he might want to borrow
money on the note or to use it for security.   It was in evi-
dence that Petry exhibited the contract to the president of
the defendant bank before that document was signed and had
some conversation about wishing to borrow money if he could
obtain a note from Dr. Flood.   For the purposes of this ap-
peal we must, of course, take the version of the transaction
most favorable to the plaintiff.   We then have this state of
facts: Dr. Flood delivered to the contractor at the time of the
execution of the contract a note which under the terms of
that agreement he was not required to execute until after the
completion of the building and the payment of all liens; he
said nothing, but the note contained the declaration in terms
that it was negotiable.   Assuming that the president of the
defendant bank knew all of these facts, the note would simply
appear to him as an advance payment on an executory con-
tract.   If Dr. Flood had said to Petry: "Take this note and,
if you like, negotiate it," the bank, knowing that fact, would
have been justified in accepting it for a valuable considera-

tion before maturity and before breach of the executory contract. But he did say substantially the same thing more emphatically than by word of mouth. He *wrote* it. It was to that extent a waiver of the terms of the building contract and was a payment before performance, upon an executory agreement. There is no pleading nor assertion that Petry could not or did not intend to perform and that the officers of the bank knew of his incapacity. On the contrary, it appears without contradiction that Petry did undertake and did partially execute the work on the building. The bank was therefore a *bona fide* holder of the note for value.

It has long been the law in California that a failure of consideration in whole or in part after a *bona fide* assignment of a promissory note is no defense to a suit by the assignee against the maker, notwithstanding the former's full knowledge of the original consideration for which the note was given. In the case of *Splivallo* v. *Patten,* 38 Cal. 139, [99 Am. Dec. 358], the original consideration for the note in suit according to the complaint, was the rent of certain premises for one year. Before the expiration of the term the landlord's title failed. Defendant alleged that the assignee of the note having full knowledge of the consideration for it, was in the same position as the landlord would have been if he had not indorsed and delivered the note to the plaintiff. This court sustained a judgment entered after a demurrer to the answer had been sustained. The same rule is stated in 7 Cyc. at page 947, and *Splivallo* v. *Patten,* 38 Cal. 139, [99 Am. Dec. 358], is cited in support thereof.

In *Davis* v. *McCready,* 17 N. Y. 232, [72 Am. Dec. 461], it is held that the breach of an executory contract which formed the consideration for the acceptance of a bill of exchange is not a defense against indorsees who took the bill for value with notice of the contract but without notice of its breach. In that case Judge Denio, delivering the opinion of the court, said: "If one will issue his negotiable paper and send it into the world, in consideration of an engagement of the party with whom he deals to do some act for his benefit in future, he declares in effect that he will pay the note or bill according to its terms to any one who shall become the holder for value in the course of business, and rely for his own indemnity upon the promise he has received as the consideration

for issuing it." See, also, *Patten* v. *Gleason,* 106 Mass. 439; *Rublee* v. *Davis,* 33 Neb. 781, [29 Am. St. Rep. 509, 51 N. W. 135]; *Alderson and Edwards* v. *Cheatham,* 18 Tenn. (10 Yerg.) 304.)

The rule announced above has been declared to be the true one in cases where the holder of the note knew of the contract but not of the breach thereof, at the time of taking title to the negotiable paper. It is of course equally applicable where a person has acquired a note in good faith for value before maturity, knowing that the consideration was an executory agreement on the part of the payee which might be broken and which was in fact violated after the transfer of the note. In *Kinkel* v. *Harper,* 7 Colo. App. 53, [42 Pac. 176], the court said: "Whenever a bill or note is disposed of for a valuable consideration the holder is not bound to inquire whether the indorser has performed or will be able to perform the agreement into which he has entered, so long as there is nothing suspicious or out of the usual course of business in the circumstances attending its issue. (*Miller* v. *Ottaway,* 81 Mich. 196, [21 Am. St. Rep. 513, 8 L. R. A. 428, 45 N. W. 665]; *Adams* v. *Smith,* 35 Me. 324; *Patten* v. *Gleason,* 106 Mass. 439; *State Nat. Bank* v. *Cason,* 39 La. Ann. 865, [2 South. 881]; *Davis* v. *McCready et al.,* 17 N. Y. 230, [72 Am. Dec. 461]; *Craig* v. *Sibbett et al.,* 15 Pa. St. 238; *Bond* v. *Wiltse et al.,* 12 Wis. 682.)" A very instructive case is *Siegel Cooper & Co.* v. *Savings Bank,* 131 Ill. 570, [19 Am. St. Rep. 51, 7 L. R. A. 537, 23 N. E. 417].) The note which was discussed in that case expressed as the consideration the privilege of placing advertising signs in certain cars for a definite period. The consideration wholly failed after the transfer of the note to defendant. That was held to be no defense against the holder for value. The court uses the following language at pages 572 and 573 of 131 Ill.: "There is a distinction, clearly recognized in the authorities, between an instrument payable at a particular day, and one payable upon the happening of some event; and the rule is, that where the parties insert a specific date of payment, the instrument is then payable at all events— and this, although, in the same instrument, an uncertain and different time of payment may be mentioned, as, that it shall be payable upon a particular day, or upon the completion of

a house, or the performance of other contracts, and the like. (*McCarthy* v. *Howell,* 24 Ill. 341, and authorities *supra.*)'' Again at page 574 of 131 Ill., speaking of the breach of the agreement by Dalziel, the payee, the court said further: "The makers had put their promissory note into the hands of Dalziel upon an expressed consideration which they were thereafter to receive, and for the performance of which they had seen fit to rely upon the undertaking of Dalziel, and we are aware of no rule by which they can hold this indorsee for value, before due and before the time of performance was to begin, chargeable with notice that the promise upon which the makers relied would not be kept and performed. (Wade on Notice, sec. 94a; *Loomis* v. *Mowry,* 8 Hun, (N. Y.) 312; *Davis* v. *McCready,* 17 N. Y. 230, [72 Am. Dec. 461].) Appellant's contention is supported by abundant authority. Indeed, as was said by Chief Justice Weaver of the supreme court of Iowa in *McNight* v. *Parsons,* 136 Iowa, 392, [125 Am. St. Rep. 265, 15 Ann. Cas. 665, 22 L. R. A. (N. S.) 718, 113 N. W. 859]: "The courts quite universally hold that knowledge that a note was given in consideration of the executory agreement *or contract* of the payee which has not been performed will not deprive the indorsee of the character of a *bona fide* holder, unless he also has notice of the breach of the agreement or contract." Other authorities which state substantially the same doctrine are *State Nat. Bank* v. *Cason,* 39 La. Ann. 866, [2 South. 881]; *Pavey* v. *Stauffer,* 45 La. Ann. 354, [19 L. R. A. 716, 12 South. 512]; *Craig* v. *Sibbett & Jones,* 15 Pa. St. 240; *Tradesmen's Nat. Bank* v. *Curtis,* 167 N. Y. 196, [52 L. R. A. 430, 60 N. E. 429]; *Black* v. *First Nat. Bank of Westminster,* 96 Md. 414, [54 Atl. 88]; *Jennings* v. *Todd,* 118 Mo. 305, [40 Am. St. Rep. 373, 24 S. W. 148]; *Fox* v. *Citizens' Bank & Trust Co.* (Tenn.), 37 S. W. 1102, [35 L. R. A. 678].

In 2 Randolph on Commercial Paper in section 1019, the rule is thus formulated: "Knowledge of an executory consideration is not knowledge of its failure, or of a breach of the agreement which formed the consideration. And *a fortiori,* notice of the agreement is not notice of equities arising out of it after the transfer of the note. But, if the purchaser knows that the consideration has failed, he is not a *bona fide* holder." In support of the last statement the learned author

cites *Russ Lumber & Mill Co.* v. *Muscupiabe Land & Water
Co.,* 120 Cal. 522, [65 Am. St. Rep. 186, 52 Pac. 995], a case
upon which the plaintiff here seems to place great reliance.
An examination of that case shows, however, that it is not
in conflict with the case of *Splivallo* v. *Patten,* 38 Cal. 139,
[99 Am. Dec. 358]. In the Russ case the court was consid-
ering a pleading in which it was averred that the holder of
the note given in consideration of a promise to furnish water
in the future had full knowledge *when he took the paper* that
the transaction was fraudulent and that the payee of the
note was insolvent and never intended to keep the agreement
to furnish water for irrigation. The plaintiff was found not
to be a *bona fide* holder of the note for value and without
notice of the equities. In this case there was no pretense that
the bank was a party to any fraud or knew of Petry's inability
to perform the stipulation of his contract.

Respondent contends that the contract in this case should
be regarded in the same light as a mortgage given for future
advances and the note as an adjunct thereto, and that the
equities must therefore prevail against the bank just as they
might prevent the assignee of a non-negotiable note supported
by a mortgage upon the security of which nothing had been
advanced, from enforcing the payment of such non-negotiable
instrument if he had taken it with notice or means of know-
ing that no advances had been actually made. It is true that,
whether negotiable in form or not, a note secured by a con-
temporary mortgage on land, executed as a part of one trans-
action is subject to the equities and is not in fact negotiable
if taken with notice of the existence of the mortgage. (*Meyer*
v. *Weber,* 133 Cal. 681, [65 Pac. 1110] ; *Briggs* v. *Crawford,*
162 Cal. 129, [121 Pac. 381] Civ. Code, sec. 1642; *National
Hardware Co. et al.* v. *Sherwood et al., ante,* p. 1, [130
Pac. 881].) And if, in the present case, the note had been
placed in escrow for delivery after the completion of the
building which was to be constructed under the contract, and
the defendant corporation knowing that fact had taken it,
the rule announced in the cases cited above might be appli-
cable; but as was held in the case last mentioned, the maker
of a note, even if ordinarily it would be subject to the defense
of want of consideration, may by his conduct, waive the ben-
efit of such defense. In the present case, the note, although

made payable at a time subsequent to a certain mentioned future date, did not for that reason bear on its face any evidence of non-negotiability. True, that method of computing the time of maturity of an instrument is not usual, but in and of itself that fact gave no hint of the contract for building a house. Moreover, the note bore the deliberate declaration that it was negotiable and it was not marked in any way as a part of the final payment to be made under the building contract. By placing it in the hands of Petry, as we have indicated, Dr. Flood gave to the contractor the means of using it improperly if Petry had not intended to construct the building. All of the circumstances of the case gave to the bank the right to conclude that the instrument was delivered as an advance payment on the contract and brings the case within the rule that "where one of two innocent persons must suffer by the act of a third, he by whose negligence it happened must be the sufferer." (Civ. Code, sec. 3543.)

. It is conceded by the appellant corporation, as of course it must be, that a trial court has the very widest discretion in the matter of granting a motion for a new trial, but it is submitted that no other rational conclusions could have been reached by the superior court under the evidence than those indicated by the findings. With this position of the appellant we agree.

The order granting a new trial is reversed.

Sloss, J., Lorigan, J., and Henshaw, J., concurred.

SHAW, J., concurring.—I concur in the judgment solely on the ground that the conduct of Flood in executing the note, under the circumstances stated in the opinion of Mr. Justice Melvin, and the terms of the note itself, show that it was his intention that the note was to be negotiated by Petry, if he chose, before its maturity and prior to the completion of the building contracted for, and that these facts create an estoppel against Flood which prevents him from asserting the failure of the consideration of the note against a third person who took it for value with knowledge of the fact that the consideration was the completion of the building free from liens or claims, provided, as was the fact here, the person took the note before the failure of consideration occurred. I

think the building contract and the note constituted the parts of a single agreement, and that, under the terms of the agreement as a whole, the consideration of the note was not the mere promise of Petry to erect the building, but the actual erection thereof free from liens or claims, and that the failure to so complete it would have been available to Flood as a defense to the note if it had remained in the hands of Petry.

Hearing in Bank denied.