(No. 2786, Feb. 28, 1924.)

## AZAR vs. SLACK

(SYLLABUS BY THE COURT.)

1. Where the consideration for the execution and delivery of a promissory note is an executory contract, knowledge of the transaction by a purchaser of said note, who acquires it by transfer before its maturity, will not prevent a recovery by him in case of a subsequent failure of such consideration caused by a breach of such executory contract.

2. In order for the defense of failure of consideration to be available against such a bona fide purchaser of such a note, before maturity, it must be alleged and proven that such failure occurred prior to the transfer of the note.

Appeal from District Court, Union County; Leib, Judge.

Action by N. H. Azar against Eugenia E. Slack. From a judgment for defendant, plaintiff appeals. Reversed, and remanded with directions.

O. P. Easterwood, of Clayton, for appellant.

The assignments, in connection with the pleadings, raise substantially two issues: (1) Did the plaintiff become the holder of the note and mortgage in good faith before it became due, for value, without notice that it had been previously dishonored and without notice at the time of the negotiation to him of any infirmity in the instrument or defect in the title of the person negotiating it? (2) Is there any substantial evidence in the record to support the judgment in favor of the appellee?

Appellant is a purchaser of the note and mortgage in good faith, for value, before maturity, in the ordinary course of business, and without notice or any knowledge of any infirmities in said instrument or any defect in the title at the time of his purchase.

There is no evidence in the record that there were any suspicious circumstances or facts connected with the negotiation of the note and mortgage at the time of the purchase by the appellant, such as would cause a reasonably prudent man to make further inquiry regarding the facts connected with the inception of said note, or for the purpose of ascertaining whether or not the payee of said note and mortgage had fully carried out and performed the services by him agreed to be performed in the executory contract, a copy of which is attached to the answer.

The plaintiff further contends that bad faith cannot be imputed to him as a result of his failure to ascertain whether the terms of the contract had been complied with at the time of his purchase.

The terms of the contract accompanying the note were executory, and the services therein provided for, rendered and to be rendered by C. L. Collins might have been rendered insofar as they had not already been rendered subsquent to the purchase of the note and mortgage by appellant; and under no circumstances could the appellant be required to wait until

the services agreed to be rendered had been rendered in order to become the holder of the note in good faith.

8 Corpus Juris, page 509, Sec. 718 and notes cited therein and found on pages 510-511 of the above authority; Kitchen vs. Loudenback, 29 Am. St. Rep., 540 at 544, par. 3; Kinkle vs. Harber (Colo.), 42 Pac. 173 at 176, beginning with the last sentence at the bottom of the first column; Citizens Bank vs. Stewart (Cal.), 133 Pac. 337; Richards vs. Monroe (Iowa), 39 Am. St. Rep. 301 at 304, par. 8 and note below; Yates vs. Spofford (Idaho), 65 Pac. 501; First National Bank vs. Stover (N. M.), 155 Pac. 911.

There is no substantial evidence to support the judgment in this case.

O. T. Toombs, of Clayton, for appellee.

As a matter of law, it is the contention of the appellee that whereas Azar purchased the $500.00 note and mortgage herein sued on from Collins, and that it was delivered to him at the same time the above contract between Collins and Slack was delivered to him, and that he, having had ample opportunity to see just what he was buying and to consider the terms and conditions of the said contract before, and at the time he made the purchase, that he thereby became bound by the conditions and terms of said contract to the same extent as Collins was bound by them, and that the recitals of the contract were sufficient in law to put Azar upon inquiry regarding the property he was about to purchase; and that the doctrine of caveat emptor should apply to him.

While the answer in this case does not plead estoppel in any very direct way, it nevertheless sets out the conduct and action of Azar in the purchase of the mortgage indebtedness, and I am rather of the opinion that the Court would be warranted in holding that the doctrine or estoppel applied in this case; and that Azar was estopped from recovering herein.

The case of Way vs. Greer, 81 N. E. 1002, is one strongly supportive of the contention of the appellee.

The celebrated and splendidly concluded case of Bank vs. Stover, 21 N. M. 453, is cited by counsel for appellant, but we confess our inability to discover any analogy between that case and the case at bar.

We contend that the contract between Collins and Slack received by Azar, together with the mortgage indebtedness, put him upon notice that there was something to be done in the premises before that mortgage indebtedness would become due and payable.

The contract itself carried a "condition subsequent" of such a nature and kind as might work an annulment of the indebtedness. Northwestern Nat'l. Life Ins. Co. vs. Ward, 155 Pac. 524; Coram vs. Davis, 103 N. E. 1027; Bowman vs. Metzger, 39 Pac. 3; Roth vs. Colvin, 32 Vt. 125.

Considering all of the facts and circumstances of this case, the state of the pleadings and particularly the admissions made by the plaintiff in his sworn reply, coupled with the testimony which he gave in this case, we cannot feel that the plaintiff can escape the burden put upon him by Section 646, Code of 1915, and we believe emphatically that he did not conform to the condition set out in sub-division IV of said Section, at the time he purchased said note and mortgage.

We respectfully submit that N. H. Azar, the appellant herein, was not a bona fide holder, in good faith, in due course of business, at the time he purchased said mortgage indebtedness.

#### OPINION OF THE COURT.

BRATTON, J. On November 23, 1918, Eugenie E. Slack executed and delivered to C. L. Collins, an attorney at law, her certain promissory note in the sum of $500, payable to his order and due 90 days thereafter. On the same day, and for the purpose of

securing the payment of said note, she executed her mortgage deed covering certain described lots situated in the town of Clayton. On January 10, 1919, and before said note matured, Collins transferred it and assigned the mortgage to the appellant.

The appellee admitted the execution and delivery of the note and mortgage, and pleaded that said note was given for services to be rendered by Collins, in his professional capacity, in procuring for her a deed from the administrator of the estate of J. C. Slack, covering the premises described in the mortgage in question; that the rendition of such services was the sole consideration moving to her for the execution and delivery of such note, all of which was evidenced by a written contract entered into by and between herself and Collins at the time said note and mortgage were executed, which contract she fully pleaded; that said Collins rendered to her no services whatsoever, and that the consideration for said note had therefore failed; that the circumstances under which said note and mortgage were executed were known to the appellant at the time he acquired them.

By reply, the appellant admitted that the agreement to render such professional services was the sole consideration for said note, and that he had notice thereof before he acquired the note, but denied that such services had not been rendered.

The trial court found that the consideration for the execution of said note was that the said Collins was to procure for the appellee a deed from the estate of J. C. Slack, she being one of the heirs interested therein; that it was then contemplated between the contracting parties to be necessary for the appelle herein to institute a suit against D. A. Paddock, the administrator of said estate, to procure such deed; that no suit was ever instituted; that the said Collins never did anything with respect to procuring such deed, and rendered to the appellee no service in connection with said estate; and that the appellant had full knowledge of the facts and circumstances under which such note

was executed prior to his purchase of it,. and conse-
quently took the same with full knowledge of its in-
firmities, as well as the defenses which might be made
against its payment. Judgment was accordingly ren-
dered against the appellant upon the note, and in
favor of the appellee, canceling the mortgage deed,
from which this appeal was taken.

[1] The appellant presents two questions for re-
view—the first being that he acquired the note in ques-
tion in good faith, for value, before maturity, and
without notice that it had been previously dishonored,
and without notice of any infirmity whatever in said
note or defect in the title of Collins, from whom he
acquired it, and the second being that there is no sub-
stantial evidence to support the judgment. A considera-
tion of the first question will dispose of the case.

By section 649, Code 1915, it is provided that the
title of a person who negotiates an instrument is
defective, when he obtains it, or any signature thereto
by fraud, duress, force, fear, or other unlawful
means, for an illegal consideration or when he nego-
tiates it in breach of faith or under such circum-
stances as amount to fraud. The statute is in this
language:

"The title of a person who negotiates an instrument
is defective within the meaning of this chapter when he
obtained the instrument, or any signature thereto, by fraud,
duress or force and fear or other unlawful means, or
for an illegal consideration or when he negotiates it in
breach of faith, or under such circumstances as amount
to a fraud."

No facts are pleaded which bring the title of
Collins within the language of the statute. It is
not charged that he secured its execution by fraud,
duress, force, or any other of the enumerated means
set forth in the statute. The appellee pleaded nothing
further than a failure of consideration in that
Collins failed to represent her in securing the admin-
istrator's deed, and it is not pleaded when such fail-
ure occurred; that is, whether before or after the

appellant acquired the note. So that, at the time Collins acquired the note, he had a good title thereto, and such remained and continued to be good until he failed to render the services he agreed to render.

Before maturity of the note, however, it was sold to the appellant, and the question then for determination is whether or not he thereby became a holder in due course within the intendment of section 646, Code 1915, which provides:

"A holder in due course is a holder who has taken the instrument under the following conditions:

"I. That it is complete and regular upon its face;

"II. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"III. That he took it in good faith and for value;

"IV. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

The entire controversy between counsel turns upon this question. As previously stated, Collins acquired a good title to the note at the time he received it, for his promise to render professional services to the appellee constituted a valuable consideration, so that the note was a valid agreement, and Collins' title thereto was free from infirmity until he breached his contract by failing to render the services which formed the consideration for the execution and delivery of said note. When such breach occurred, the consideration failed. The contract between Collins and the appellee did not fix or specify any time within which such professional services should be rendered, and, under the well-established rule of law, a reasonable time would be allowed for such purpose. Nothing was pleaded or proven when such time expired. In fact, the appellee did not proceed upon this theory, but instead that the note and contract formed one agreement, and that the appellant, having knowledge of such contract, was not a holder in due course, but took the note subject to its defeat by a subsequent failure

of the moving consideration for its execution. In this contention, appellee is clearly in error, and the trial court fell into the same error. It is the well-established rule of law, from which there is practically no dissent, that knowledge on the part of an indorsee of a promissory note that it had been given in consideration of some executory contract or agreement of the payee which said payee afterwards fails to perform, will not deprive such indorsee of his character of a bona fide holder in due course, unless, prior to his acquisition of such commercial paper, he had actual notice of a breach of such executory contract. To deprive such holder of his protection as a holder in due course, it must be shown that the breach of the executory contract occurred prior to the transfer of the note, and the purchaser had knowledge thereof.

"A simple failure of consideration, in whole or in part, after a bona fide assignment thereof before maturity, will not avail the makers as a defense in a suit by the assignee of a promissory note. And if accomodation makers of a note sign it to enable the accomodated party to raise money to pay his debts, the fact that the later diverts the proceeds of the note is no defense as against a bona fide holder of the note for value. Similarly an averment that certain bills were accepted for the accomodation of the drawers on their representation that the proceeds would be applied to specific purposes, and that the drawers failed to apply such proceeds to such purposes, does not allege any defense as against the bona fide holder of such bills. The fact that the consideration of a negotiable note is future and contigent does not make it liable to equities beween the parties in the hands of a bona fide holder before maturity. Such a holder is not affected by the fact that the consideration was an executory contract which has been broken, the breach having occurred without his knowledge or subsquent to his acquisition of the instrument." 3 R. C. L. § 1023.

"Knowledge of the consideration for a bill or a note is not notice of a subsequent failure of the consideration. Thus knowledge by an indorsee that the note was given on consideration of an executory agreement by the payee does not deprive the holder of his character as a holder in due course, if the payee fails to perform, where the holder had no knowledge of the breach prior to his acquisition of the instrument. So the fact that the purchaser knew that the consideration was future and contingent and that there might be offsets against it will not affect the character of the purchaser." 8 C. J. § 718, p. 509.

Among the many cases supporting the texts see: Davis et al. v. McCready et al., 17 N. Y. 230, 72 Am. Dec. 461; Jennings v. Todd et al., 118 Mo. 296, 24 S. W. 148, 40 Am. St. Rep. 373; Tradesman's National Bank v. Curtis et al., 167 N. Y. 194, 60 N. E. 429, 52 L. R. A. 430; Splivallo v. Patten, 38 Cal. 139, 99 Am. Dec. 358; Moyses et al. v. Bell, 62 Wash. 534, 114 Pac. 193; Phoenix Safety Inv. Co. v. Michaels et al., 20 Ariz. 32, 176 Pac. 587; German-American Bank v. Wright et al., 85 Wash. 460, 148 Pac. 769, Ann. Cas. 1917D, 381; Miller v. Ottaway, 81 Mich. 196, 45 N. W. 665, 8 L. R. A. 428, 21 Am. St. Rep. 513; Shufeldt et al. v. Barlass, Sheriff, 33 Neb. 785, 51 N. W. 134; Hakes v. Thayer et al., 165 Mich. 476, 131 N. W. 174; East Lansing State Bank v. Keil, 213 Mich. 17, 180 N. W. 347; Rublee v. Davis, 33 Neb. 779, 51 N. W. 135, 29 Am. St. Rep. 509; Pavey v. Stauffer, 45 La. Ann. 353, 12 South, 512, 19 L. R. A. 716; McNight v. Parsons, 136 Iowa, 390, 113 N. W. 858, 22 L. R. A. (N. S.) 718, 125 Am. St. Rep. 265, 15 Ann. Cas. 665; Flood v. Petry et al., 165 Cal. 314, 132 Pac. 256, 46 L. R. A. (N. S.) 861; Pratt v. Dittmer, 51 Cal. App. 512, 197 Pac. 365; Producers' Nat. Bank v. Elrod, 68 Okl. 248, 173 Pac. 659, L. R. A. 1918F, 1016; Besse v. Morgan, 84 Okl. 203, 202 Pac. 1012; Delk et al. v. City Nat. Bank of Duncan, 85 Okl. 238, 205 Pac. 753; Farmers' & Merchants' Bank v. Nissen (S. D.) 190 N. W. 1014; Martel v. Lafayette Sugar Refining Co., 153 La. 248, 95 South. 706. See, also, the copious notes appended to Flood v. Petry et al., 46 L. R. A. (N. S.) 861, supra, and Producers' National Bank v. Elrod, L. R. A. 1918F, 1016, supra.

[2] It seems to be well established that in cases of this kind, where the consideration for the execution of a promissory note is an executory contract which has been subsequently breached by a failure to perform, with the consequential failure of consideration, and the note has been transferred to a third person, who has knowledge of such contract at the time he acquires the note, it is necessary, in order to defeat his

right of recovery, to affirmatively show that such breach occurred prior to the transfer of the note, and that the assignee had notice thereof. It is not sufficient to merely show that he knew of the executory contract, because no infirmity in the note exists until the breach occurs, and hence, without such affirmative showing, there is no infirmity in the note at the time it is so acquired. Such a purchaser is a holder in due course within the provisions of section 646, supra, and holds the same free from any defect in title of prior parties and free from any defenses available to them. The rights of such a holder are prescribed by section 651, Code 1915, in this language:

"A holder in due course holds the instrument free from any defect of title or prior parties, and free from defense available to prior parties among themselves, and may enforce payment of the instrument for the full amount therof against all parties liable thereon."

In some of the cases cited, the conclusion was reached without reference to any statutory provisions. These are not in conflict with the provisions of the Negotiable Instruments Act. The same conclusion must be reached under the terms of such act, because such a purchaser is a holder in due course.

From what we have said, and a review of the authorities cited, it appears that the appellee pleaded no defense to the appellant's cause of action. Conceding every fact which she alleged to be true, they constituted no defense in law, because she failed to plead or prove that the consideration for the execution of such note failed prior to its purchase by the appellant of which he then had knowledge, and the appellant was therefore entitled to judgment.

The cause must be reversed and remanded, with directions to the lower court to enter a decree for the appellant as prayed for, and it is so ordered.

PARKER, C. J., and BOTTS, J., concur.